United States Court of Appeals,

Fifth Circuit.

No. 91–1817.

Floyd D. ARRINGTON, Plaintiff–Appellee,

v.

COUNTY OF DALLAS, et al., Defendants,

Jack Richardson, Defendant–Appellant.

Timothy HAMMOND, Plaintiff–Appellee,

v.

COUNTY OF DALLAS, et al., Defendants,

Jack Richardson and Rick Richardson, Defendants–Appellants.

Sept. 8, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before WILLIAMS, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Two constables of Dallas County, Texas, along with the county government, bring this interlocutory appeal seeking to overturn the district court's denial of qualified immunity from suits by two former deputy constables, who seek redress for loss of jobs, allegedly because they failed to support the constables' election campaigns. For the reasons set forth below we affirm in part, and reverse in part, and remand for trial.

I

Jack Richardson is constable for Precinct 2 of Dallas County, Texas. Rick Richardson is constable for Precinct 3. Both were elected to their current terms of office in 1989, two years after the two districts were formed from old Precinct 2. Jack Richardson had been Precinct 2's constable prior to the precinct partition. Rick is Jack's son.

Floyd Arrington was employed as a Deputy Constable in Precinct 2 from October 1981 until July 27, 1988, when Jack fired him. Timothy Hammond was Deputy Constable in Precinct 2 from February 1986. Hammond was initially stationed in Richardson, Texas, but was transferred to the Irving, Texas office in May 1988. He was transferred back to Richardson on January 1, 1989. He was employed as a probationary employee by then Constable–Elect Rick Richardson in Precinct 3 until being fired on February 3, 1989.

Both Arrington and Hammond allege that Jack asked them to help in his March 1988 reelection campaign but that they did not become involved. After the campaign, they claim, they were treated less favorably than were the others who had supported the Richardsons' elections. Also during this time, Arrington and Hammond obtained office records that are said to show that Jack had used his access to police records for political purposes and that he spied on Hammond. Arrington and Hammond say that they found the files in the course of their ordinary duties and that they only retained the files as evidence of possible criminal activity by the Richardsons.

Jack Richardson, however, contends that the papers were stolen from locked office files. Accounts of events vary, but during his investigation of the files' removal, Jack Richardson fired Arrington. Richardson asserts that he fired Arrington for refusing to cooperate with a police investigation of the stolen office files.

Shortly after the election, Jack Richardson transferred Hammond to his Irving, Texas office. This action, Hammond contends, was a punishment for his failure to support Richardson's reelection. At the end of 1988, Hammond left the Precinct 2 constabulary and started working for Rick Richardson in Precinct 3. One month later, Rick Richardson fired Hammond, allegedly for unauthorized possession of stolen office files. (Arrington apparently provided Hammond with some of the contested office files, which included records from Hammond's personnel file.) Hammond contends that he was fired for telling a newspaper reporter about official improprieties committed by

Jack Richardson.

Arrington initially sought a declaratory judgment against Jack Richardson in Texas state court. In November 1988, that court held that deputy constables are not subject to the county civil service rules. Arrington then filed this federal suit under 42 U.S.C. § 1983 against Jack Richardson and Dallas County, seeking damages for deprivations of his right to free speech caused by retaliation for refusing to assist in the election campaign. He also asserted claims under the Fifth and Sixth Amendments, alleging that he was fired for refusing to waive his rights during a criminal investigation. He further alleged that, under the Fourteenth Amendment, he was wrongly deprived of a liberty interest because he was denied a name-clearing hearing in circumstances that impaired his reputation. Arrington also sought damages for state law claims for deprivation of his right to procedural due process, wrongful discharge, slander, defamation of character, and breach of contract.

Hammond filed a separate action against Jack and Rick Richardson and Dallas County, alleging that, because he was fired for speaking with a newspaper reporter on a matter of public significance, his termination was in violation of his rights to free speech. Hammond also alleged that Jack and Rick conspired to deprive him of his rights to free speech.

The district court consolidated the two actions and granted partial summary judgment. Applying *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the court held that the qualified immunity of public officials against suits for damages barred Arrington's claims for the taking of a property interest, breach of contract, and wrongful discharge; it also barred Hammond's claims for the taking of a property interest, breach of contract, wrongful discharge, and intentional infliction of emotional distress. The court specifically denied each motion for summary judgment on all remaining grounds.

The defendants appeal, arguing that the district court should have barred the plaintiffs'

remaining claims: first, those based on a taking of a liberty interest in violation of both the Fourteenth Amendment of the United States Constitution and Article One, section 19, of the Texas Constitution; second, those based on a violation of the plaintiffs' rights under the First Amendment; third, those based on violations of Arrington's rights secured under the Fifth and Sixth Amendments, and finally, those based on conspiracy to violate their rights under the First Amendment.[1]

II

We review *de novo* a summary judgment, applying the same standards of law as those available to the district court. *Trial v. Atchison, T. & S.F.R. Co.,* 896 F.2d 120, 122 (5th Cir.1990). Therefore, to sustain the partial summary judgment rendered below, we must find that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" concerning the issues decided. Fed.R.Civ.P. 56(c); *Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 872 (5th Cir.1991).

III

Qualified immunity bars suits for damages against public officials for conduct within the scope of their discretionary duties, performed with an objectively reasonable belief that the conduct does not violate the clearly established statutory or constitutional rights of another. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. It follows that the district court is obligated to grant summary judgment if the law at the time of the actions giving rise to the complaint did not clearly establish a cause of

---

[1] The defendants argue that the court, in effect, granted summary judgment to bar all claims but those in four groups identified by the court. The court, however, granted judgment barring the enumerated claims described above, and denied judgment on "all remaining claims." Other claims, such as Arrington's Fifth and Sixth Amendments claims and Hammond's claim for retaliatory transfer, were not rejected by the partial summary judgment.

The defendants first presented several of their arguments on appeal—particularly that the district court erred in not barring the claims unaddressed in its opinion—in their reply brief. The Fifth and Sixth Amendments arguments, however, are closely related to the liberty interest argument raised in the defendants' original brief, and the retaliatory transfer argument is related to the First Amendment argument. Given the related original arguments, and to speed resolution of this case, we consider these arguments to be before us on appeal.

action for the violation of statutory or constitutional rights, which the official should have known then existed. *Id.*

Clearly, the Richardsons were public officials, and the transfer and firing of their employees were within their discretion as public officials. Arrington was an employee of Jack Richardson, and Hammond was an employee of both Jack and Rick, although he was only a probationary employee of Rick Richardson. Therefore, the conduct on which the plaintiffs base their action for damages is against public officials acting within the scope of their discretion. We must, therefore, determine whether the conduct alleged, if proved, violated any of the plaintiffs' statutory or constitutional rights clearly established at the time of the conduct.

A

The district court, in applying the doctrine of qualified immunity, barred Arrington's claims for the taking of a property interest, for breach of contract, and, under state law, for wrongful discharge. It barred Hammond's claims for the taking of a property interest, for breach of contract, for wrongful discharge under state law, and for intentional infliction of emotional distress. The defendants now argue that the remaining claims should likewise be barred.

Arrington and Hammond do not now challenge the district court's judgment. We are thus concerned only with those claims that remain following partial summary judgment, namely, the Fifth and Sixth Amendments claims; the liberty interest claims under the Fourteenth Amendment to the United States Constitution and Article One of the Texas Constitution; and the First Amendment and related conspiracy claims.

B

We turn first to Arrington's claims that his rights under the Fifth and Sixth Amendments were violated. In his amended complaint, he alleged he

would show that while conducting a criminal and internal investigation of his deputies in July of 1988, Defendant [Jack] RICHARDSON requested Plaintiff to respond to certain questions concerning alleged criminal conduct. Once it was made clear to Plaintiff that he could be criminally prosecuted if his answers incriminated him, Plaintiff refused to participate further in the investigation and demanded the right to confer with legal counsel. Plaintiff was then immediately terminated by Defendant [Jack] RICHARDSON for Plaintiff's refusal to waive his rights against self-incrimination under the 5th Amendment to the United States Constitution, and his right to counsel under the 6th Amendment to the United States Constitution. Termination of Plaintiff's employment with Defendants under such circumstances amounts to a violation of Plaintiff's civil rights.

The district court did not address this claim, and the defendants argue that they are entitled to its dismissal.

(1)

Initially, we segregate the claims Arrington makes in this argument into one claim asserted under the Fifth Amendment and one asserted under the Sixth. The Sixth Amendment right to counsel is distinct from that protected under the *Miranda–Edwards* doctrine[2] and does not attach until the initiation of an adversary judicial process in respect to a specific crime. *McNeil v. Wisconsin,* ―― U.S. ――, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Such a proceeding had not been commenced at the time Jack Richardson interviewed Arrington. Thus, Arrington's rights under the Sixth Amendment were not implicated by either refusal of access to counsel or termination of employment in response to a demand for counsel at that interview. We therefore find that the defendants are entitled, at least, to qualified immunity from Arrington's claims under the Sixth Amendment.

(2)

In general, under the Fifth Amendment, a state may not discharge an employee solely for invoking the privilege against self-incrimination. *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). On the other hand, public employees may be required to answer potentially incriminating questions "if they have not been required to surrender their constitutional

---

[2]The right asserted under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is based on the Fifth Amendment right against self-incrimination and must be respected from the moment it is asserted. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

immunity." *Lefkowitz,* 431 U.S. at 806, 97 S.Ct. at 2136; *cf. Hoover v. Knight,* 678 F.2d 578 (5th Cir.1982) (policewoman asserted Fifth Amendment privilege, and no violation of her rights occurred).

If a public employer has not requested its employee to surrender protected rights, the employee's refusal to answer the employer's questions is a valid ground for dismissing the employee. *Hoover,* 678 F.2d at 582. We noted in *Gulden v. McCorkle,* 680 F.2d 1070 (5th Cir.1982), *cert. denied* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983) (choice between polygraph or discharge was no violation of employee's Fifth Amendment rights), that four Supreme Court cases culminating in the *Lefkowitz* decision emphasize that the employee's rights are imperilled *only* by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers. *Gulden,* 680 F.2d at 1074.[3] The government's mere failure to tender immunity cannot amount to an attempt to compel a waiver of immunity. 680 F.2d at 1076. Thus, we held in *Gulden,* an invocation of Fifth Amendment rights must be based on (1) the public employer's refusal to allow immunity for the use of potentially incriminating answers that (2) the employer has compelled the employee to provide. *Id.; cf. Benjamin v. City of Montgomery,* 785 F.2d 959, 962 (11th Cir.1986) *cert. denied* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (police officers could not be fired for refusing to waive their Fifth Amendment privilege).

Returning to Arrington's Fifth Amendment claim, we find he has pleaded a violation of clearly identified rights: his right to consult with counsel and his right to remain silent in the face of criminal prosecution. He alleges that he was commanded to answer questions and that Richardson warned that the answers to these questions could be used to prosecute Arrington. Upon such warning that he could be prosecuted based upon his answers, he invoked his right to counsel and also refused to

---

[3]*Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Asso., Inc. v. Commissioner of Sanitation of the City of New York,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

answer the questions; then he was fired. Thus, he has stated a case in which his public employer not only sought to compel him to answer questions but also refused to grant him immunity from the use of the answers. In short, the allegations of the complaint allow a conclusion that Richardson sought, not merely Arrington's cooperation—but sought his criminal prosecution as well; and when Arrington asserted his constitutional rights, Richardson fired him. Such a case runs afoul of the limited but carefully drawn standard set forth in *Lefkowitz* and *Gulden*. Although questions of fact remain as to whether Arrington can prove that these events occurred as he described them, for the reasons he alleges, such questions of fact render the qualified immunity question inappropriate as a matter for summary judgment.

C

We next consider both plaintiffs' claims that the defendants' actions resulted in a taking of a liberty interest protected by the Constitutions of the State of Texas and the United States. Arrington asserted in his amended complaint that he would prove that Jack Richardson, and thus Dallas County, deprived him of a liberty interest protected by the Fourteenth Amendment.

> In firing the Plaintiff, Defendant [Jack] RICHARDSON accused Plaintiff of engaging in criminal conduct, to wit: stealing property belonging to another, being in possession of stolen property, and unlawfully carrying a firearm. Plaintiff ... was entitled ... to a name clearing hearing prior to any discharge. Despite Plaintiff's numerous written and oral requests for a pretermination hearing, [these were denied]. Defendant Richardson further refused to reveal the names of the individuals who purportedly had knowledge of the criminal conduct allegedly engaged in by Plaintiff. Defendants' failure to grant Plaintiff such a hearing constitutes a violation of Plaintiff's liberty rights under the 14th Amendment to the United States Constitution without due process of law.

Hammond asserted that Rick Richardson, and thus Dallas County, also denied him of a liberty interest protected under the Fourteenth Amendment. Hammond, in essentially the same language as that used by Arrington, pleaded that Rick Richardson had accused him of possessing stolen property and of violating departmental policy.

A public employer may unconstitutionally deprive its employee of a liberty interest if it

discharges him under stigmatizing circumstances without giving the employee an opportunity to clear his name. *Rosenstein v. City of Dallas,* 876 F.2d 392, 395 (5th Cir.1989), *reinstated in part* 901 F.2d 61, *cert. denied* —— U.S. ——, 111 S.Ct. 153, 112 L.Ed.2d 119 (1990). To assert a claim for the deprivation of this constitutional right to a name-clearing hearing, a plaintiff must allege that he was a public employee, that he was discharged, that stigmatizing charges were made against him in connection with his discharge, that the charges were false, that the charges were made public, that he requested a name-clearing hearing, and that the hearing was denied. *Rosenstein,* 876 F.2d at 395–396.

Simply analyzed, neither Arrington's nor Hammond's complaints alleged any publication of the stigmatizing charges, as required in *Rosenstein.*[4] Although they allege that they were innocent, fired for a stigmatizing reason, and requested but were denied a name-clearing hearing, they have not alleged a violation of a clearly established right, *i.e.,* the right to a name-clearing hearing that comports with due process under the Fourteenth Amendment—unless they also allege that the defendant published these charges.

The plaintiffs' pendant state law claims for the violation of their rights to procedural due process under Article I, section 19, of the Texas Constitution are identical to the federal claims for deprivation of a liberty interest. *Price v. City of Junction,* 711 F.2d 582, 590 (5th Cir.1983). For the reasons set forth above relating to the claim under the Fourteenth Amendment, we find that the defendants have likewise failed to state a cognizable claim under Article I, section 19, of the Texas Constitution.

D

---

[4]Although Arrington has made some attempt to prove that Jack Richardson published the allegedly stigmatizing claims, he has failed to present sufficient proof that any voluntary act of Richardson caused these charges to be published. Moreover, his unsuccessful attempt in this regard cannot remedy his failure, in both his original and amended complaints, to allege publication of a defamatory statement.

We next consider the plaintiffs' claims that the defendants violated their First Amendment rights. These claims rest on three distinct grounds. First, Arrington and Hammond each contend that their firings were motivated by their failure to engage in the election campaigns of their employers. Hammond also contends that his transfer was similarly retaliatory. Second, Arrington alleges that he was fired for communicating information of public interest to a newspaper reporter. Third, Hammond alleges that Jack and Rick Richardson conspired to engage in a reprisal for his exercise of his right to free speech.

The defendants urge us to find that Arrington's and Hammond's speech was not protected because it was known by the plaintiffs to be false or in reckless disregard of the truth. Such speech is not protected under the First Amendment. *Gates v. City of Dallas,* 729 F.2d 343 (5th Cir.1984). In this respect, however, the district court found that questions of fact precluded summary judgment. We agree and hold that the defendants are not entitled to summary judgment on the basis of qualified immunity with respect to the plaintiffs' claims based on the First Amendment.

IV

In sum, Arrington's surviving claims are reduced to his allegations that Jack Richardson fired him for refusing to work on Jack's campaign and for refusing to waive his privilege against self-incrimination. Hammond's surviving claims are his allegations that Rick and Jack Richardson retaliated against him for exercising protected rights to speak with a reporter on a matter of public interest and to abstain from the election campaign. Therefore, the following claims survive for trial: Arrington's claim against Jack Richardson and Dallas County for violation of his First Amendment rights; Arrington's claim against Jack Richardson and Dallas County for termination because of his refusal to waive his Fifth Amendment rights; Hammond's claim against Jack Richardson and Rick Richardson for conspiracy to violate his First Amendment rights; Hammond's claims against Rick Richardson and Dallas County for deprivation of his First Amendment rights by his transfer and by his termination. All other claims are barred.

We therefore AFFIRM in part the district court's partial summary judgment but REVERSE the district court's denial of partial summary judgment on all the remaining claims and REMAND for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED.