**REVERSE and RENDER and Opinion Filed February 8, 2023**



In The

### Court of Appeals
### Fifth District of Texas at Dallas

_____

**No. 05-22-00327-CV**

_____

**CITY OF FORT WORTH, TEXAS, Appellant**
**V.**
**JOEL FITZGERALD, SR., Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-08184**

## MEMORANDUM OPINION

Before Justices Carlyle, Garcia, and Rose[1]
Opinion by Justice Rose

Joel Fitzgerald, Sr. sued the City of Fort Worth after he was terminated as the City's Chief of Police, alleging among other claims that he was denied due process. The trial court denied the City's plea to the jurisdiction as to those claims, and the City now appeals. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (permitting interlocutory appeal of order denying governmental unit's plea to the jurisdiction). Concluding that the trial court lacked jurisdiction, we reverse the trial court's order

_____

[1] The Hon. Jeff L. Rose, Justice, Assigned

and render judgment granting the City's plea. Because the issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

The City hired Fitzgerald as its police chief in 2015 and terminated his employment on May 20, 2019. Fitzgerald filed suit for wrongful termination on June 6, 2019, alleging the City terminated him because he disclosed illegal practices by the City involving access to the FBI's Criminal Justice Information Systems (CJIS) database. *See City of Fort Worth v. Fitzgerald*, No. 05-20-00112-CV, 2021 WL 486396, at *1 (Tex. App.—Dallas Feb. 10, 2021, pet. denied) (mem. op.). Among other claims, Fitzgerald alleged that the City violated his liberty and property interests under article I, § 19 of the Texas Constitution. These claims, pleaded in Counts 3 and 4 of his operative petition,[2] are at issue in this appeal. In a plea to the jurisdiction, the City sought dismissal of Counts 3 and 4, contending that Fitzgerald had not established a waiver of the City's immunity for those claims.

In his response to the City's plea, Fitzgerald argued he had "allege[d] a facially valid constitutional claim that his due process rights were violated by the City's termination of his employment." He argued that without notice, City Manager David Cooke and Assistant City Manager Jay Chapa summoned him to a meeting

---

[2] The City's plea to the jurisdiction was directed to Fitzgerald's third amended petition. After the hearing on the City's plea but before the trial court signed its order, Fitzgerald filed his fourth amended petition. Because the plea, Fitzgerald's response to it, and the trial court's order cite the third amended petition, we refer to that petition as "operative." However, we note that the allegations at issue in this appeal are identical in the two petitions.

on May 20, 2019 and informed him that if he did not "resign and disavow his investigations of CJIS violations . . . the City would terminate him immediately for cause and designate his discharge as less than honorable." He contended that he was not allowed to retain a copy of the termination memo documenting the basis for his termination and that his request to consult with his attorney was refused.

In his petition, Fitzgerald alleged that "[w]ithin minutes after the termination meeting," the City called a press conference to announce his termination. He pleaded that in violation of statute and the Texas Constitution, Cooke released the termination memo to the press. He also alleged that Cooke disparaged his character to the press. In his affidavit in support of his response to the City's plea to the jurisdiction, Fitzgerald stated that "during the press conference, David Cooke openly questioned my 'judgment and leadership skills' and questioned my loyalty."

In the same affidavit, Fitzgerald stated that in a second press conference, Cooke and Chapa "openly criticized and disparaged my leadership, tarnishing my professional reputation in the policing industry." Fitzgerald also stated that "Mayor Betsy Price made a separate statement to national media outlets to announce that she 'supported the termination' and that the City 'deserves a leader who will be present, active, and engaged,' implying that I possessed none of the aforementioned qualities."

In his response to the City's plea to the jurisdiction, Fitzgerald summarized the City's allegations in the termination memo:

The termination memo states that "[b]ecause of your increasing lack of good judgment as the Police Chief of the City of Fort Worth, we have lost confidence that you can be a trusted member of the City's Management team. You have a track record of making decisions that are more focused on your best interest instead of the best interest of the city, the organization or department as a whole."

Fitzgerald then enumerated "specific examples identified in the letter of his alleged 'lack of good judgment'":

(1) Dr. Fitzgerald's conduct during the May 12, 2019, Top Cop Dinner and Award Ceremony;

(2) an alleged inability to "build relationships with other department directors and employees";

(3) Dr. Fitzgerald's alleged "failure to . . . address concerns raised by the CJIS auditor [which] created more problems and added unnecessary stress and drama";

(4) Dr. Fitzgerald's conducting a pre-recorded media interview in an attempt to improve [his] image;

(5) Dr. Fitzgerald introducing "the 48 Rules of Power" [sic, 48 Laws of Power] "as a leadership primer to [his] employees";

(6) "publicly accepting a position with another city";

(7) "writing memos to [himself] alleging discrimination or unfairness then refusing to move forward with investigations to address [his] allegations"; and

(8) failing to manage the Police Department budget.

In Count 3 of his petition, Fitzgerald contends that "The City's action terminating Dr. Fitzgerald with a general rather than an honorable discharge, releasing the termination memo to the press, and holding a press conference disparaging his name, without giving him an opportunity for a public hearing to clear his name under their City Charter, is termination under 'stigmatizing circumstances'

–4–

and an unconstitutional denial of due process in violation of Dr. Fitzgerald's liberty interest under Art. I, Section 19 of the Texas Constitution." He alleges that he has lost at least one valuable job reference, has been told by a recruiter that it is unlikely he will find another job as a police chief due to the circumstances of his termination, and has been "turned down for numerous job opportunities for which he is overqualified." He pleaded for "mandamus relief to require the City to hold a public hearing under its charter to allow him to contest his termination and clear his name."

In Count 4, Fitzgerald claims that his termination without a public hearing was an unconstitutional violation of his property interest under Article 1, § 19 of the Texas Constitution and a violation of local government code § 143.013. He pleads that the City admitted his termination was not "an at-will employment decision" and that under § 143.013, he should have been reinstated to the rank he held immediately before his removal as police chief, namely, "Acting Police Chief."

The trial court heard the City's plea on March 11, 2022. By written order of April 7, 2022, the trial court denied the plea "as to Plaintiff's causes of action for unconstitutional deprivation of liberty interest and property interest in Counts 3 and 4 of Plaintiff's Third Amended Petition." This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

In two issues, the City contends the trial court erred by denying its plea to the jurisdiction because Fitzgerald "did not and could not plead facts" sufficient to raise a fact issue that the termination of his employment denied him due process or due

–5–

course of law based on (1) an infringement of his constitutionally-protected liberty interest, or (2) a deprivation of a constitutionally-protected property interest in his continued employment with the City.

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Id.* (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

Because subject-matter jurisdiction is a question of law, we review de novo a trial court's ruling on a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). In assessing a plea to the jurisdiction, we begin by considering the plaintiff's live pleadings and determine whether the facts alleged affirmatively demonstrate that jurisdiction exists. *Heckman*, 369 S.W.3d at 150 (citing *Miranda*, 133 S.W.3d at 226).

If the pleadings fail to allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also fail to affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Miranda,* 133 S.W.3d at 226–27. If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227. We must also consider evidence the parties presented below that

–6–

is relevant to the jurisdictional issues, *Bland Indep. Sch. Dist.,* 34 S.W.3d at 555, including evidence that a party has presented to negate the existence of facts alleged in the plaintiff's pleading. *See Miranda,* 133 S.W.3d at 227.

We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Heckman*, 369 S.W.3d at 150 (citing *Miranda*, 133 S.W.3d at 226). A plea to the jurisdiction must be granted if the defendant affirmatively negates the existence of the court's jurisdiction. *Id.*

## DISCUSSION

The Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." TEX. CONST. art. 1, § 19. The supreme court has explained that because "[t]he Texas due course clause is nearly identical to the federal due process clause," Texas courts "have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). Consequently, although federal interpretations of procedural due process are not binding in this case, we consider them to be persuasive authority. *See id.*

Fitzgerald argues the trial court has jurisdiction over his claims that the City violated his liberty and property interests. We consider each interest in turn.

**1. Liberty interest**

"'A public employer may unconstitutionally deprive its employee of a liberty interest if it discharges him under stigmatizing circumstances without giving the employee an opportunity to clear his name.'" *Caleb v. Carranza*, 518 S.W.3d 537, 545 (Tex. App.—Houston [1st Dist] 2017, no pet.) (quoting *Arrington v. Cty. of Dallas*, 970 F.2d 1441, 1447 (5th Cir. 1992), and citing *Brantley v. Tex. Youth Comm'n*, 365 S.W.3d 89, 106 (Tex. App.—Austin 2011, no pet.)). "'To assert a claim for the deprivation of this constitutional right to a name-clearing hearing, a plaintiff must allege that he was a public employee, that he was discharged, that stigmatizing charges were made against him in connection with his discharge, that the charges were false, that the charges were made public, that he requested a name-clearing hearing, and that the hearing was denied.'" *Id.* (quoting *Arrington*, 970 F.2d at 1447). The remedy for denial of due process in these circumstances is a name-clearing hearing, not retention on the payroll, back pay, or a right to continued employment. *Dennis v. S&S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 344 (5th Cir. 1978) (citing *Codd v. Velger*, 429 U.S. 624, 627 (1977) (per curiam), and *Board of Regents v. Roth*, 408 U.S. 564, 573 n.12 (1972)).

The public charges must be "'so stigmatizing that they create a 'badge of infamy' that destroys plaintiffs' ability to obtain other employment.'" *Caleb*, 518 S.W.3d at 545 (quoting *Arrington*, 970 F.2d at 1447). "Injury to a plaintiff's

reputation does not, in itself, amount to a deprivation of this liberty interest." *Brantley*, 365 S.W.3d at 106.

Numerous courts have considered whether particular charges created such "badges of infamy." In *Upshaw v. Erath County, Texas*, the court gave "[e]xamples of dismissals held to be stigmatizing," including "dismissals for dishonesty or for having committed a serious felony." No. 3:17-CV-1758-S, 2019 WL 2341378, at *5 (N.D. Tex. June 3, 2019) (mem. op. & order) (citing *White v. Thomas*, 660 F.2d 680, 684–85 (5th Cir. 1981) (police officer accused of lying on an official document), and *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975) (accusation of participation in conspiracy to violate federal statutes including use of explosives to commit federal felonies)). In *Dennis*, the court found a school district's public charge that a teacher had a drinking problem to be stigmatizing. *See Dennis*, 577 F.2d at 341–43. In *Willbanks v. Smith County, Texas*, 661 F. Supp. 212, 215–16 (E.D. Tex. 1987), the court held there was evidence to support the jury's finding of stigma where a sheriff was terminated based on allegations that he was involved in a series of thefts of saddles and cattle.

"In contrast, dismissals that merely suggest inadequate job performance or incompetence are not sufficient." *Upshaw*, 2019 WL 2341378, at *5. In *Upshaw*— as in this case, as we discuss below—a deputy sheriff and captain were given a "general discharge" rather than an "honorable discharge," as those terms are defined in the Texas Occupations Code. *Id.* at *1, 5. The officers' request for a name-clearing

hearing was denied. *Id.* at \*2. The officers contended that "the 'General Discharge' was a 'proverbial "kiss of death" for a law enforcement officer,'" so their employment opportunities had been substantially foreclosed. *Id.* Quoting the statutory language, the court explained that a "general discharge" "means either that the termination 'was related to a disciplinary investigation of conduct that is *not . . .* criminal misconduct [or] insubordination or untruthfulness,' or that the termination was 'for a documented performance problem.'" *Id.* at \*5 (quoting TEX. OCC. CODE § 1701.452(b)(2)–(3)). Concluding that "[a]ccordingly, the 'General Discharge' merely suggests that Plaintiffs' performance was inadequate or incompetent, rather than that Plaintiffs committed a serious felony or were dishonest," the court granted the motion to dismiss the plaintiffs' due process claims. *Id.*

Other courts have reached similar conclusions. In *Evans v. City of Dallas*, 861 F.2d 846, 851 and n.29 (5th Cir. 1988) (per curiam), the court held that progress reports "indicat[ing] excessive absenteeism, poor attitude, public criticism of his department, bad language, and alienation of co-workers" did not create a badge of infamy. And in *Town of Shady Shores v. Swanson*, the court concluded there was no badge of infamy where the employer complained that Swanson "was unable to perform the tasks required of her, was lax in her performance of her duties, and was once rude to the mayor." 544 S.W.3d 426, 442 (Tex. App.—Fort Worth 2018), *rev'd in part on other grounds*, 590 S.W.3d 544 (Tex. 2019); *see also Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979) (no badge of infamy where

–10–

Department of Agriculture employee was given unsatisfactory rating for honesty but not accused of property theft); *Caleb*, 518 S.W.3d at 545 (where employee received name-clearing hearing, prevailed, and found employment elsewhere, charges that she participated in standardized testing scandal were not so stigmatizing that they created badge of infamy); *Phelan v. Texas Tech Univ.*, No. 07-07-0171-CV, 2008 WL 190741, at *10 (Tex. App.—Amarillo Jan. 23, 2008, pet. denied) (mem. op.) (read in context, references to plaintiff as a "creep" and description of his behavior as "dysfunctional" were not so stigmatizing as to deprive plaintiff of liberty interest).

In this case, Fitzgerald argues he was unconstitutionally deprived of his liberty interest when he was discharged under stigmatizing circumstances without a name-clearing hearing. In its plea to the jurisdiction, the City addressed each allegation on which Fitzgerald relies.

### a. The termination memo

In the termination memo, the City criticized Fitzgerald's "increasing lack of good judgment" as police chief and "track record of making decisions that are more focused on [his own] best interest" instead of the City's or the department's. The memo cited Fitzgerald's "inability to build relationships," "add[ing] unnecessary stress and drama" to an audit, attempting to improve his image, recommending a particular book on leadership to his employees, publicly accepting a position with another city, refusing to follow up on investigations that he initiated, and failing to manage the department's budget.

Unlike the cases where a "badge of infamy" was found, however, none of the City's criticisms impugned Fitzgerald's character for honesty or accused him of crime. *See, e.g., White*, 660 F.2d at 684–85 (accusing an officer of lying on an official document); *Briggs*, 514 F.2d at 798 (accusations of federal felonies). We conclude the City's statements in the termination memo did not constitute a "badge of infamy" implicating Fitzgerald's liberty interest. *See Town of Shady Shores*, 544 S.W.3d at 443 ("Because the allegations about Swanson's performance made in connection with her termination were not stigmatizing, her termination did not affect her liberty interest.").

**b. The press conferences**

In his petition, Fitzgerald alleges that immediately after the termination meeting, the City called a press conference to announce that Fitzgerald had been terminated with cause. He contends the City "disparaged [his] character" by releasing the termination memo to the press. In his response to the City's plea and his supporting affidavit, Fitzgerald also explained that during the press conference, Cooke "openly questioned Dr. Fitzgerald's 'judgment and leadership' skills." Fitzgerald also alleges that in a second press conference on May 22, 2019, Cooke and Chapa "again openly criticized and disparaged my leadership, tarnishing my professional reputation in the policing industry." And in his response to the City's plea, Fitzgerald alleged that "Mayor Betsy Price made a separate statement where she announced that she 'supported the termination' and said that the City 'deserves

a leader who will be present, active, and engaged,' implying that Dr. Fitzgerald had none of these qualities."

In its plea to the jurisdiction, the City described the initial press conference:

On May 20, 2019, Cooke held a press conference discussing Plaintiff's removal. At the press conference, Cooke indicated that the removal was a result of a culmination of items, including a recent incident in Washington, D.C., Plaintiff's previous selection as a finalist for Police Chief of the City of Baltimore, Plaintiff's fiscal stewardship, and Plaintiff's teamwork within the organization, all of which brought into question Plaintiff's "judgment and leadership."

In sum, the record reflects that the City and the Mayor generally repeated the concerns expressed in the termination memo in their comments to the press. As we have explained, these allegations do not constitute a "badge of infamy" affecting Fitzgerald's liberty interest. *See Town of Shady Shores*, 544 S.W.3d at 443.

### c. The F-5 form

Upon Fitzgerald's separation from the Department, the City was required to complete and file a Texas Commission on Law Enforcement Form F-5, "Separation of Licensee." *See* TEX. OCC. CODE § 1701.452. Fort Worth Police Captain Bryan Jamison signed the form on May 23, 2019. Jamison checked the box showing that Fitzgerald's separation from the Fort Worth Police Department was a "General Discharge." The form described this category:

General Discharge[3]

(A) was terminated by, retired or resigned from, or died while employed by a law enforcement agency and the separation was related to a disciplinary investigation of conduct that is not included in the definition of dishonorably discharged; or

(B) was terminated by or retired or resigned from a law enforcement agency and the separation was for a documented performance problem and was not because of a reduction in workforce or an at-will employment decision.

The form included two other categories, "Honorably Discharged" and "Dishonorably Discharged." An honorable discharge was defined as one made "while in good standing and not because of pending or final disciplinary actions or a documented performance problem." A dishonorable discharge was defined as termination, or retirement or resignation in lieu of termination, "in relation to allegations of criminal misconduct" or "for insubordination or untruthfulness."

Fitzgerald contested the "General Discharge" designation before the State Office of Administrative Hearings (SOAH) and obtained a favorable decision. *See* TEX. OCC. CODE § 1701.4525 ("Petition for Correction of Report; Hearing"). In a decision and order dated May 15, 2020, the administrative law judge found that "the Police Department has failed to establish misconduct that would warrant [Fitzgerald's] separation being classified as a general discharge," and concluded that

---

[3] As we discuss, section 1701.452 of the Texas Occupations Code, entitled "Employment Termination Report," sets forth the requirements for the form, including descriptions of the three categories of discharges discussed here. *See* TEX. OCC. CODE § 1701.452(b).

"the F-5 Report should be changed to reflect that [Fizgerald] was honorably discharged."

A general discharge, for reasons not involving allegations of criminal misconduct, insubordination, or untruthfulness, would not have been so stigmatizing as to create a "badge of infamy." *See Upshaw*, 2019 WL 2341378 at \*5 ("general discharge" of law enforcement officer on F-5 form was not badge of infamy). But in any event, Fitzgerald received a hearing from SOAH, the result was favorable to him, and the record now reflects he received not a "general" discharge but an "honorable" one.

Considering the pleadings and the evidence relevant to the jurisdictional issue, *see Heckman*, 369 S.W.3d at 150, we conclude the trial court lacked jurisdiction over Fitzgerald's claim that the City violated his liberty interest under Article 1, Section 19 of the Texas Constitution. We sustain the City's first issue.

**2. Property interest**

In its second issue, the City argues that Fitzgerald's due process claim fails because he was an at-will employee with no protected property right in his continued employment. The City contends it offered sufficient evidence that Fitzgerald was at at-will employee, shifting the burden to Fitzgerald to offer competent evidence that he was "depriv[ed] of a constitutionally-protected property interest in his continued employment with the City."

To invoke due process protection, an employee must have a cognizable property interest in continued employment. *See Roth*, 408 U.S. at 577 (to have a property interest protected by due process, a person must have more than an abstract need or unilateral desire for it; a person "must, instead, have a legitimate claim of entitlement to it"). An at-will employment relationship[4] does not create such an interest. *See, e.g., Moreno v. Tex. Dep't of Transp.*, 440 S.W.3d 889, 897 (Tex. App.—El Paso 2013, pet. denied); *Coté v. Rivera*, 894 S.W.2d 536, 542 (Tex. App.—Austin 1995, no writ).

"A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee at will has the burden of proving an express agreement or written representation to that effect." *Id.* Any ambiguity in the grant of a property interest in public employment is resolved in favor of the State. *Byars v. City of Austin*, 910 S.W.2d 520, 523 (Tex. App.—Austin 1995, writ denied).

Fitzgerald argues he was not an employee at will. He contends that "an employment agreement existed," evidenced by his testimony at the SOAH hearing about a letter from the City offering him employment that set out a schedule of

---

[4] "Texas follows the employment-at-will doctrine, and employment for an indefinite term may be terminated at will and without cause." *Williams v. First Tennessee Nat'l Corp.*, 97 S.W.3d 798, 802–03 (Tex. App.—Dallas 2003, no pet.). "Absent a specific contract term to the contrary, this doctrine allows an employee to quit or be terminated without liability on the part of the employer or the employee, with or without cause." *Id.* at 803.

payments in the event that he was involuntarily terminated without cause. He concedes that "this fact alone does not indicate whether Dr. Fitzgerald was an employee at will," but argues that "it at least confirms that a contract for his employment existed." The City responds, however, that Fitzgerald has not alleged the existence of any agreement limiting the City's ability to terminate his employment.

Fitzgerald also relies on the City's completion of the F-5 form as a "General Discharge" to argue that his employment was not at will. Relying on the wording of the "General Discharge" category—that his termination "was not because of . . . an at-will employment decision"—Fitzgerald argues that his employment was not "at will." He contends that by checking the "General Discharge" box on the F-5 form, "the City appears to concede that Dr. Fitzgerald was not an employee at will." We disagree. The form's statutory source, § 1701.452(b)(2) of the Texas Occupations Code, defines "generally," "honorably," and "dishonorably" discharged. TEX. OCC. CODE ANN. § 1701.452(b)(1), (3). The statute addresses types of discharges, not terms of employment. *See generally id.* § 1701.452 (requiring law enforcement agencies to report employee resignations, retirements, terminations, and separations to the Texas Commission on Law Enforcement).

As the City argues, Fitzgerald's reading of the statute would "turn every officer who was terminated for a performance problem into a contract employee." Under Texas law, the presumption is otherwise. *See Talford v. Columbia Med. Ctr.*

–17–

*at Lancaster Subsidiary, L.P.*, 198 S.W.3d 462, 464 (Tex. App.—Dallas 2006, no pet.) (discussing "presumption of at-will employment" under Texas law). "Absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Id.* (citing *Midland Judicial Dist. Cmty. Supervision & Corrs. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam)). We conclude that by checking the "General Discharge" box on the form, the City did not admit that Fitzgerald was not an at-will employee.

Fitzgerald next contends he was employed by the City as "Acting Chief of Police" before he completed the "procedural requirements necessary" to become police chief and department head. He argues that because neither party offered evidence in the record on this point, we must accept his allegation as true and draw inferences in his favor. Relying on local government code § 143.013(c), he argues that he should have been reinstated in the department as acting police chief when he was terminated as chief. *See* TEX. LOC. GOV'T CODE ANN. § 143.013(c) ("if a person is removed from the position of department head, the person shall be reinstated in the department and placed in a position with a rank not lower that that held by the person immediately before appointment as department head"; the person "retains all rights of seniority in the department").

The City responds that Fitzgerald never held any rank under the Texas civil service laws prior to his appointment as the department head for the police

–18–

department. The record reflects that immediately before his employment with the City as department head and police chief, he was the chief of police for the city of Allentown, Pennsylvania. The City further argues that Fitzgerald did not raise this argument in the trial court and has offered no supporting evidence. The City concludes that that there is nothing in local government code Chapter 143 to support Fitzgerald's contention. We conclude there is no evidence to raise a fact issue that Fitzgerald held a lower rank in the department before he was appointed as department head.

Last, Fitzgerald contends public policy does not support the City's argument that he was an employee at will. He contends that there is no "special class of citizens who have greater constitutional rights based on the terms of their employment agreements," arguing "[i]t suggests an elitism that some Texas citizens, either due to luck or skill in negotiation of contracts, have more constitutional rights than others." He concludes that this "public policy advanced by the City is dangerous and should not be adopted." But no new public policy is at issue here. *See Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) ("For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."); *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723 (Tex. 1990) ("The

long standing rule in Texas is that employment for an indefinite term may be terminated at will and without cause.").

Considering the relevant pleadings and the evidence, *see Heckman*, 369 S.W.3d at 150, we conclude the trial court lacked jurisdiction over Fitzgerald's claim that the City violated his property interest in his employment under Article 1, Section 19 of the Texas Constitution. We sustain the City's second issue.

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction as to Fitzgerald's claims in Counts 3 and 4 of his petition and render judgment dismissing the claims for lack of jurisdiction.

/Jeff L. Rose/
JEFF L. ROSE
FORMER CHIEF JUSTICE,
COURT OF APPEALS,
THIRD DISTRICT OF TEXAS AT AUSTIN
SENIOR JUDGE
SITTING BY ASSIGNMENT

220327F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

CITY OF FORT WORTH, TEXAS,
Appellant

No. 05-22-00327-CV     V.

JOEL FITZGERALD, SR., Appellee

On Appeal from the 191st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-08184.
Opinion delivered by Justice Rose.
Justices Carlyle and Garcia
participating.

In accordance with this Court's opinion of this date, the trial court's order of April 7, 2022 is **REVERSED** and judgment is **RENDERED** that:

Plaintiff/Appellee Joel Fitzgerald Sr.'s claims in Counts 3 and 4 of his operative petition are dismissed for lack of jurisdiction.

It is **ORDERED** that appellant City of Fort Worth, Texas recover its costs of this appeal from appellee Joel Fitzgerald, Sr.

Judgment entered February 8, 2023