**AFFIRMED IN PART; REVERSED IN PART; and REMANDED and Opinion Filed December 20, 2022**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00088-CV**

**BILLY D. BURLESON, III, JON J. MARK, AND CRAIG A. BENNIGHT, Appellants**
**V.**
**COLLIN COUNTY COMMUNITY COLLEGE DISRICT, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-04944-2014**

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Carlyle

Police officers Billy D. Burleson, III, Jon J. Mark, and Craig A. Bennight (collectively, the Officers) appeal from the trial court's judgment dismissing their claims against Collin County Community College District (the College). In this memorandum opinion, we affirm in part, reverse in part, and remand the case to the trial court for additional proceedings. *See* TEX. R. APP. P. 47.4.

This dispute centers on the Officers' allegations that the College retaliated against them for reporting unlawful actions taken by other College employees. And

it is not the first time the case has been before us. *See Burleson v. Collin Cnty. Comm. Coll. Dist.*, No. 05-15-01361-CV, 2017 WL 511196, at *1 (Tex. App.—Dallas Feb. 8, 2017, no pet.) (mem. op.) (*Burleson I*). Having previously documented the factual background underlying the dispute, we only briefly recount the case's procedural posture as relevant to the issues now on appeal.

The Officers filed their original petition in December 2014, asserting a single claim for retaliation under chapter 554 of the government code. The trial court granted the College's plea to the jurisdiction, and the Officers appealed. We reversed, concluding fact issues existed as to whether the College took adverse personnel actions against the Officers. *See id.*

On remand from this Court, the Officers amended their petition to add various federal claims, which prompted the College to remove the case to federal court. The federal court ultimately granted the College a partial summary judgment and entered a final judgment both dismissing the Officers' federal constitutional claims with prejudice and dismissing Officer Mark's disability discrimination claims without prejudice. It then declined to exercise jurisdiction over the Officers' state law claims and remanded those claims back to state court for resolution. *See Burleson v. Collin Cnty. Comm. Coll. Dist.*, No. 4:17-cv-00749, 2019 WL 1198398, at *3 (E.D. Tex. March 14, 2019) (*Burleson II*). The Fifth Circuit eventually affirmed that judgment. *See* 847 Fed. App'x 259 (2021).

Back in the state trial court, the Officers again amended their petition and added additional claims. The Officers did not, however, remove the federal constitutional claims dismissed with prejudice by the federal court. The College, in turn, filed a series of summary judgment motions and pleas to the jurisdiction attacking the Officers' various claims. The trial court eventually granted each of those motions, sanctioned the Officers $4,680 for reasserting the previously dismissed federal claims, and entered a final judgment dismissing the Officers' claims in their entirety. This appeal followed.

We review the trial court's rulings de novo. *See State v. Mesquite Creek Dev'lp., Inc.*, 618 S.W.3d 383, 389 (Tex. App.—Dallas 2020, no pet.). Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When the trial court's order does not specify the grounds for granting a summary judgment, we will affirm if any theory presented to the trial court and preserved for our review is meritorious. *Provident Life & Accident Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If a party moves for summary judgment on both traditional and no-evidence grounds, we generally address the no-evidence motion first. *First U. Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). If the challenge to the no-evidence motion fails, we need not consider the traditional motion. *Id.*

To defeat a no-evidence motion, the non-movant must produce evidence sufficient to raise a genuine issue of material fact as to each of the challenged

elements. *Id.* This requires the non-movant to specifically identify the evidence it seeks to have the trial court consider and explain why that evidence demonstrates the existence of a fact issue. *Great Hans, LLC v. Liberty Life Serv. Corp.*, No. 05-20-00113-CV, 2021 WL 5822841, at *2 (Tex. App.—Dallas Dec. 8, 2021, no pet. h.) (mem. op.). The trial court is not required to search through the record and determine on its own whether a fact issue exists without specific guidance from the non-movant. *Id.*

A genuine fact issue exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). A fact issue does not exist if the evidence is "so weak as to do no more than create a mere surmise or suspicion" of its existence. *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

To obtain a traditional summary judgment, a defendant must conclusively disprove an element of the plaintiff's claim or conclusively prove every element of an affirmative defense. *Alexander v. Wilmington Sav. Fund Soc.*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). A matter is conclusively established if ordinary minds could not differ in drawing a conclusion from the evidence. *See id.* In assessing whether the defendant has met its burden, we take as true all evidence favorable to the plaintiff, view the evidence in the light most favorable to the plaintiff, and indulge every reasonable inference in the plaintiff's favor. *Id.*

In reviewing a plea to the jurisdiction based on evidence purporting to negate the existence of jurisdictional facts, our standard of review "generally mirrors that of a summary judgment." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Thus, the party filing the plea must meet "the summary judgment proof standard for its assertion that the trial court lacks jurisdiction." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

## THE TRIAL COURT ERRED BY DISMISSING THE OFFICERS' FREE SPEECH CLAIMS UNDER THE TEXAS CONSTITUTION

The Officers first argue the trial court erred by dismissing their free speech claims under article I, § 8 of the Texas Constitution, as well as their requests for mandamus and injunctive relief, because the College did not expressly address them in its motions. As a general rule, "a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion." *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). But that rule does not apply to requests for mandamus or injunctive relief because they are not causes of action. *See Hughes v. McDonald*, 122 S.W.2d 366, 371 (Tex. Civ. App.—Austin 1938), *rev'd on other grounds*, 152 S.W.2d 327 (Tex. 1941) ("[T]he writ of mandamus is merely a remedy for righting a wrong or enforcing a right. It is not itself a cause of action. The wrong sought to be righted or right sought to be enforced constitutes the cause of action . . . ."); *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769–70 (Tex. App.—Dallas 2010, pet. denied) ("A permanent injunction is not a cause of action

but an equitable remedy. To obtain an injunction a party must first assert a cause of action." (citation omitted)). To the extent the trial court properly dismissed the causes of action underlying the Officers' requests for mandamus and injunctive relief, it also properly dismissed their requests for those remedies.

The Officers' free speech claims under the Texas Constitution, however, are causes of action that the College failed to address in their various motions. Thus, the trial court erred by dismissing those free speech claims. The College nevertheless argues any error was harmless because the Officers' free speech claims fail as a matter of law. *See* TEX. R. APP. P. 44.1(a); *G&H Towing*, 347 S.W.3d at 297–98 (harmless error rule applies to all errors, including summary judgments granted on unaddressed grounds). We partially disagree.

The Officers' operative petition asserts free speech claims based on alleged retaliation stemming from protected speech. But the Officers tailored their allegations towards establishing monetary liability under 42 U.S.C. § 1983—a federal statute for which there is no state analog. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995).

As a public community college, the College is protected by governmental immunity. *See Houston Comm. College Sys. v. HV BTW, LP*, 589 S.W.3d 204, 209 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "Governmental immunity comprises both immunity from liability and immunity from suit." *See City of McKinney v. Han's Rest. Grp., L.P.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013,

no pet.). Unless waived, immunity from liability protects governmental units against judgments, while immunity from suit deprives the courts of jurisdiction over suits brought against governmental units. *Id.* at 110–11.

We agree with the College that the Officers' free speech claims under the Texas Constitution, as pleaded, are barred by governmental immunity because: (1) the Officers cannot sue for monetary damages based on alleged violations of the Texas Constitution, *see City of Garland v. Jordan*, No. 05-21-00377-CV, 2022 WL 1498121, at \*5 (Tex. App.—Dallas May 12, 2022, pet. denied) (mem. op.); and (2) any constitutional claims for equitable relief must be brought against the allegedly responsible government actors in their official capacities, *see id.*

Nevertheless, because the College raised these jurisdictional arguments attacking the Officers' free speech claims for the first time on appeal, we cannot conclude the trial court harmlessly erred by dismissing those claims with prejudice and without granting leave to amend, unless the College can establish: (1) either the Officers' pleadings or the record conclusively negates jurisdiction; (2) the Officers had a full and fair opportunity in the trial court to develop the record and amend their pleadings to show jurisdiction yet failed to do so; or (3) the Officers cannot show jurisdiction even if given the opportunity to develop the record and amend their pleadings. *See Rusk v. State Hosp. v. Black*, 392 S.W.3d 88, 100 (Tex. 2012). The College does not address any of these requirements on appeal.

In any event, we reject the College's argument that the Officers' claims under the Texas Constitution necessarily fail because they are redundant of the First Amendment claims properly dismissed by both the federal court and the trial court. The College's argument ignores the specific grounds on which those courts dismissed the First Amendment claims—grounds that do not apply to the Officers' claims under the Texas Constitution.

In their motion for summary judgment in the trial court, the College argued that the doctrines of res judicata and collateral estoppel barred the Officers from re-litigating their section 1983 free speech claims after the federal court dismissed the claims with prejudice. Res judicata, also known as claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Motient Corp. v. Dondero*, 269 S.W.3d 78, 83 (Tex. App.—Dallas 2008, no pet.).[1] We agree with the College that res judicata applies to the Officers' section 1983 claims.[2] But the court in *Burleson II* expressly declined to exercise jurisdiction over the Officers' pendant state law claims. *See* 2019 WL 2266633, at *9. Thus, res

---

[1] The preclusive effect of a federal judgment is determined by federal law. *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 286, 287 n.62 (Tex. 2002).

[2] We reject the Officers' argument that res judicata and collateral estoppel cannot apply here because the federal and state proceedings are all part of the same "suit" or "action." *See, e.g.*, *Petrello v. Prucka*, 415 S.W.3d 420, 430 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (applying res judicata to remanded state law claims); *HDW2000 256 E. 49th Street v. City of Houston*, No. 01-12-00053-CV, 2012 WL 6095226, at *7–10 (Tex. App.—Houston [1st Dist.] Dec. 6, 2012, pet. denied) (mem. op.) (applying collateral estoppel to remanded state law claims); *Whitemyer v. Omokaro*, No. 05-01-00780-CV, 2002 WL 1981367, at *7 (Tex. App.—Dallas Aug. 29, 2002, pet. denied) (not designated for publication) (applying collateral estoppel to remanded state law claims).

judicata does not prevent the Officers from asserting those claims in state court. *See Motient*, 269 S.W.3d at 88.

As for collateral estoppel, also known as issue preclusion, the doctrine applies when: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002) (quoting *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)). In *Burleson II*, the court granted partial summary judgment against the Officers on their section 1983 claims because there was no evidence that the College's Board of Trustees adopted or promulgated an official policy or custom responsible for their alleged constitutional violations. Establishing a section 1983 claim against a governmental unit requires proof of such an "official policy or custom." *See Burleson II*, at 2019 WL 2266633, at *7. As we previously noted, however, there is no state analog to section 1983. *See Bouillion*, 896 S.W.2d at 147. And the elements of a free speech retaliation claim under the Texas Constitution do not require proof of an official policy or custom. S*ee Caleb v. Carranza*, 518 S.W.3d 537, 544 (Tex. App.—Houston [1st Dist.] 2017, no pet.).[3] Thus, the federal court's holding that the

---

[3] Those elements are: (1) an adverse employment decision; (2) speech involving a matter of public concern; (3) the speaker's interest in commenting on matters of public concern outweighed the employer's interest in promoting efficiency; and (4) the speech motivated the adverse employment decision. *Caleb*, 518 S.W.3d at 544. In addition, public employees must "establish that they spoke as citizens, rather than as employees pursuant to their official duties." *Id.*

Officers failed to prove such an official policy or custom does not collaterally estop the Officers from asserting free speech retaliation claims under the Texas Constitution.

To the extent the College contends the record otherwise demonstrates a basis for dismissing the Officers' claims with prejudice, it neither asserted that basis in the trial court nor established it on appeal. *See Rusk State Hosp.*, 392 S.W.3d at 100. We therefore conclude the trial court erred to the extent it dismissed the state constitutional claims with prejudice, and we render judgment dismissing those claims without prejudice for lack of jurisdiction. On remand, if properly raised, the trial court may consider in the first instance whether to allow the Officers to amend their petition to assert state constitutional claims against a proper party.

THE TRIAL COURT ABUSED ITS DISCRETION BY SANCTIONING THE OFFICERS

The Officers next contend the trial court abused its discretion by sanctioning them for reasserting their section 1983 claims after the federal court dismissed those claims with prejudice.[4] In both its order awarding summary judgment on the section 1983 claims and its final judgment, the trial court stated it was awarding attorney's fees as sanctions under civil procedure rule 13 and chapter 10 of the civil practices and remedies code.

---

[4] To the extent the Officers argue the trial court erred by granting summary judgment on their section 1983 claims, their arguments lack merit. *See supra* note 2. Moreover, by asking us to reverse the trial court's conclusion that the Officers' section 1983 claims are barred by res judicata, the Officers undermine the numerous representations they made to the trial court, in hopes of avoiding sanctions, that they have no intention of re-litigating those claims.

We review a sanctions award for abuse of discretion. *See Allstate Prop. & Cas. Ins. Co. v. Ford*, No. 05-20-00463-CV, 2021 WL 4810358, at *3 (Tex. App.—Dallas Oct. 15, 2021, pet. denied) (mem. op.). A trial court may sanction an attorney or represented party under rule 13 if a pleading, motion, or other filing is "groundless" and brought either in bad faith or for purposes of harassment. TEX. R. CIV. P. 13. But the trial court must "presume that pleadings, motions, and other papers are filed in good faith," *id.*, and the party seeking sanctions bears the burden of overcoming that presumption. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014).

A filing is "groundless" for purposes of Rule 13 if it has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. In determining whether a filing is groundless, the trial court must objectively consider whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time of the filing. *Ford*, 2021 WL 4810358, at *2. In addition to being groundless, a sanctionable filing under Rule 13 must also be false when made, brought in bad faith, or brought for purposes of harassment. *Id.* Thus, "Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about motives and credibility of the person signing the alleged groundless pleading." *Id.* at *3 (cleaned up) (quoting *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ)). "Without hearing evidence on the circumstances surrounding the filing of the pleading and the signer's credibility and motives, the

–11–

trial court has no evidence to determine that the appellant or its attorneys filed the pleading in bad faith or to harass." *Id.* (cleaned up). "Motions and arguments of counsel are not evidence."

A trial court may also award sanctions under civil practices and remedies code chapter 10 if a pleading or motion is filed for an improper purpose or if it lacks legal or factual support. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001, 10.004. Like rule 13, chapter 10 generally requires an "evidentiary hearing to make necessary factual determinations about the motives and credibility of the person signing the allegedly groundless pleading." *Ford*, 2021 WL 48010358, at *3. Unlike rule 13, however, the trial court may award sanctions based solely on a claim being made without a legal or factual basis. *See Nath*, 446 S.W.3d at 369. But the trial court may not assess a monetary sanction against a represented party based on legal contentions in a pleading. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 10.004.

Whether under rule 13 or chapter 10, the trial court's order must specify the reasons for awarding sanctions. TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE §§ 10.005. This requirement is mandatory, and failing to explain the basis for a sanctions award is reversible error. *See Graman v. Graman*, No. 05-14-01254-CV, 2016 WL 235055, at *6 (Tex. App.—Dallas Jan. 20, 2016, no pet.) (mem. op.).

The Officers contend we should reverse the sanctions award here because there is no evidence to support it and because the trial court failed to specify its reasoning. In support, they note both that the trial court did not conduct an in-person

evidentiary hearing on the sanctions request and that its orders are silent as to the grounds justifying a sanctions award.

The College counters that an in-person hearing is not required and that the trial court may award sanctions based on evidence taken by submission. *See Cire v. Cummings*, 134 S.W.3d 835, 843–44 (Tex. 2004) ("A 'hearing' does not necessarily contemplate a personal appearance before the court or an oral presentation to the court."). According to the College, the trial court could have awarded sanctions based solely on its evidence establishing that res judicata and collateral estoppel precluded the section 1983 claims as a matter of law. And as for the trial court's failure to detail its reasoning, the College suggests that, to the extent we find error, we should remand to allow the trial court to issue a compliant order.

We agree with the Officers that the trial court reversibly erred by failing to specify its reasons for awarding sanctions, *see Graman*, 2016 WL 235055, at *6, and thus we need not determine whether sufficient evidence would otherwise support the award. We reverse the sanctions award without prejudice to the College requesting sanctions again upon remand.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY EXCLUDING THE OFFICERS' SUMMARY JUDGMENT EVIDENCE

Before addressing the propriety of granting the College's remaining dispositive motions, we must address the Officers' challenges to the trial court's rulings excluding significant portions of their summary judgment evidence. For

purposes of this issue, the parties agree that the Officers' combined response to the College's dispositive motions was due November 12, 2020. The Officers filed their response, along with Exhibits A through H, at 11:55 p.m. and Exhibits I through Q at 11:58 p.m. on November 12. But they did not file the remainder of their exhibits until after midnight, with the last batch filed at 12:15 a.m. on November 13.

On the day before submission, the College filed written objections asking the trial court to strike all exhibits filed after the deadline and exclude large portions of the Officers' timely filed evidence on one or more grounds, including that statements contained in the Officers' affidavits and exhibits were irrelevant, conclusory, based on speculation, mere subjective belief, hearsay, unauthenticated, or not the best evidence. In its order granting the College's various motions, the trial court sustained the College's objections in their entirety and stated that it considered only "the timely filed summary judgment evidence."

We review the exclusion of summary judgment evidence for abuse of discretion. *Beinar v. Deegan*, 432 S.W.3d 398, 402 (Tex. App.—Dallas 2014, no pet.). The Officers attack the trial court's rulings on a variety of grounds, but to preserve a complaint for appellate review, the record must show the appellant made the complaint to the trial court by a timely request, objection, or motion. *See id.* (citing TEX. R. APP. P. 33.1(a)). Moreover, our precedent dictates that "[w]hen a party fails to object to the trial court's ruling that sustains an objection to [its]

–14–

summary judgment evidence, [the party] has not preserved the right to complain on appeal about the trial court's ruling." *Id.*

Here, the Officers do not identify where in the record they objected to the trial court's ruling on the College's objections to their summary judgment evidence, and our review of the record has revealed no such objection. In fact, the Officers did not complain about the trial court's evidentiary rulings in either their motion for new trial or their supplement to that motion. Consequently, our precedent dictates that the Officers cannot challenge those evidentiary rulings on appeal. *See id.* at 403.

But even if we considered the arguments the Officers raised before the trial court issued its evidentiary rulings, we would find no abuse of discretion. In their motion for leave to late-file their untimely exhibits, the Officers argued: (1) the College's evidentiary objections were themselves untimely because the College filed them less than three days before submission; and (2) they missed the deadline because the e-filing system required them to break their voluminous response into multiple parts that could not all be processed before the deadline, and the fifteen minute delay caused no prejudice.

As the Officers acknowledge on appeal, our precedent forecloses their first argument. *See Bradford Partners II, L.P. v. Fahning*, 231 S.W.3d 513, 521–22 (Tex. App.—Dallas 2007, no pet.) ("[A] movant's objections to the competency of a non-movant's evidence that are filed the day of the hearing are not untimely and may be considered and ruled upon by the trial court."). Although the Officers ask us to

overrule *Bradford Partners*, we may not do so "absent an intervening change in law by the legislature, a higher court, or this Court sitting en benc." *Snell v. Ellis*, No. 05-20-00642-CV, 2021 WL 1248276, at *6 n.16 (Tex. App.—Dallas Apr. 5, 2021, no pet.) (mem. op.).

With respect to their second argument, a trial court should grant a motion for leave to late-file a summary judgment response if the movant establishes good cause for failing to timely respond by showing "(1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002). The Officers did not attach any affidavits or other evidence to substantiate their excuse for missing the deadline. But even if we assume the trial court could consider the bare assertions of counsel, we cannot conclude the trial court abused its discretion by determining that the Officers failed to meet their burden of establishing good cause. *See id.* at 689 ("Even assuming that the trial court could consider counsel's unsworn argument . . . in deciding whether Cimarron established good cause to allow a late response, we cannot say that the trial court abused its discretion in denying leave based upon counsel's bare assertion that he had 'miscalendared' the summary judgment hearing.").

Accordingly, we will consider only the evidence to which the trial court did not sustain the College's objections.

THE TRIAL COURT PARTIALLY ERRED BY GRANTING THE COLLEGE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLEA TO THE JURISDICTION

The Officers next contend the trial court erred by granting the College's second motion for partial summary judgment, which addressed the Officers' declaratory judgment claims, as well as their claims based on alleged violations of the right to petition, the right to due process and due course of law, and the Texas Open Meetings Act (TOMA).

As noted above, the Officers cannot seek monetary damages for alleged constitutional violations, and they cannot obtain equitable relief because they did not sue the individuals allegedly responsible for the violations in their official capacities. *See City of Garland*, 2022 WL 1498121, at *5. Thus, to the extent the Officers seek monetary damages or equitable relief for alleged violations of their rights to petition or due process and due course of law, the trial court did not err by dismissing their claims.

Likewise, the trial court did not err by dismissing the Officers' claims to the extent they were based on alleged violations of sections 614.023 or 617.005 of the government code. *See City of Bruceville-Eddy v. Ferguson*, No. No. 10-12-00109-CV, 2012 WL 5381420, at *2 (Tex. App.—Waco Nov. 1, 2012, no pet.) (mem. op.) (noting that "there is nothing in sections 614.022–.023 that clearly and

–17–

unambiguously waives the City's immunity"); *City of Caldwell v. Lilly*, No. 10-12-00102-CV, 2012 WL 3242742, at *5 (Tex. App.—Waco Aug. 9, 2012, no pet.) (mem. op.) (noting that "nothing in [chapter 617] clearly and unambiguously waives the City's immunity"); *Johnson v. Waxahachie Indep. Sch. Dist.*, 322 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (no private right of action for damages under government code section 617.005).

With respect to the Officers' declaratory judgment claims, although the Uniform Declaratory Judgments Act (UDJA), CIV. PRAC. & REM. CODE § 37.001, *et seq.*, waives governmental immunity for certain claims, it is not a general waiver and does not expand the trial court's jurisdiction. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). Rather, it is "merely a procedural device for deciding cases already within the court's jurisdiction." *Id.* It allows a claimant to challenge the validity of a statute or other law, but it does not waive immunity for claims seeking a declaration of the claimant's rights under those laws. *See City of McKinney*, 412 S.W.3d at 112. Nor does it waive immunity for claims seeking a declaration that governmental actors have violated the law. *Id.* Moreover, "a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Tex. Parks & Wildlife Dep't*, 354 S.W.3d at 388. Thus, immunity will bar even an otherwise proper claim under the UDJA if the claim would have the "effect of establishing a right to relief" for which the Legislature has not waived immunity. *Id.*

Here, the Officers' live petition seeks a declaration that the Board, through its various policies or by failing to act, violated the Officers' rights under Texas law. The UDJA does not waive immunity for such claims. *See Patel v. Tex. Dep't of Licensing and Reg.*, 469 S.W.3d 69, 77 (Tex. 2015). But even if we assume without deciding that the UDJA waives immunity to the extent the Officers challenge the validity of the Board's written policies, despite the UDJA expressly waiving immunity only for challenges to statutes and ordinances,[5] the trial court did not err by dismissing the declaratory judgment claims.

The Officers' live petition challenges the validity of two written Board policies: (1) BDB (Local), which limits the extent to which the Officers may interact directly with the Board and prohibits the Board from deliberating or deciding an issue not included on the noticed agenda; and (2) DGBA (Local), which governs the process for employment grievances. The Officers' petition asserts these policies violate the Texas Constitution and section 617.005 of the government code because they prevent the Officers from directly petitioning the Board with their grievances.

The evidence establishes, however, that the Officers had—but chose not to exercise—the opportunity to address the Board directly during the public comments portion of each Board meeting. That is all either the Texas Constitution or section

---

[5] *See Ackers v. City of Lubbock*, 253 S.W.3d 770, 775–76 (Tex. App.—Amarillo 2007, pet. denied) (claim seeking declaration under UDJA that school policy was unconstitutional not barred by immunity); *but see Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 & n.4 (Tex. 2011) (explaining that waiver may be inferred without explicit statutory language only on "rare occasions").

617.005 requires.[6] *See Corpus Christi Indep. Sch. Dist. v. Padilla*, 709 S.W.2d 700, 704–06 (Tex. App.—Corpus Christi 1986, no writ).

The Officers nevertheless contend the public comments portion of each Board meeting is legally inadequate to protect their rights because both the Board's written policies and TOMA prevent the Board from acting upon any issues not specifically listed on the agenda posted in advance of the meeting. Thus, the Officers argue, even if they presented their grievances to the Board during the public comments portion of a Board meeting, the Board would be powerless to provide a remedy. This argument lacks merit because nothing in the Board's policies would prevent the Board from adding any issues raised by the Officers to the agenda for a subsequent meeting at which the Board could act.

The Officers also argue the public comments portion of each Board meeting cannot provide the basis for a summary judgment because Michael Gromatzky, the College's former police chief, testified he informed the College's officers that the Board did not want to hear from them. According to the Officers, this creates a fact issue as to whether "the College's actual conduct, as opposed to its written policies," violated the Officers' rights. But the UDJA does not waive immunity for claims seeking a declaration that the College, through its agents, acted unlawfully. *See City of McKinney*, 412 S.W.3d at 112. Absent a valid challenge to the Board's written

---

[6] Because we conclude the Board's written policies would not violate section 617.005 in any event, we need not address the College's argument that section 617.005 does not apply here because the Officers are not unionized employees.

–20–

policies themselves, the Officers have no arguable basis for asserting immunity waiver under the UDJA.

With respect to the Officers' claims under TOMA, that statute's purpose is to provide public access to and increase public knowledge of governmental decision-making. *See City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). To that end, TOMA generally requires governmental units to conduct their business in meetings that—with limited statutory exceptions—must be open to the public. TEX. GOV'T CODE §§ 551.002. The Act also requires governmental units to provide the public with "written notice of the date, hour, place, and subject of each meeting."

Nevertheless, TOMA "confers a fairly finite right: to notice of a meeting and the right to attend." *Dallas Indep. Sch. Dist. v. Peters*, No. 05-14-00759-CV, 2015 WL 8732420, at *6 (Tex. App.—Dallas Dec. 14, 2015, pet. denied) (mem. op.). And it provides limited remedies for individuals alleging violations of the Act: (1) any "action taken by a governmental body in violation of [TOMA] is voidable"; and (2) "[a]n interested person . . . may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of [TOMA] by members of a governmental body." TEX. GOV'T CODE §§ 551.141, 551.142(a).

In its motion, the College argued the Officers' TOMA claims all fail because there is no evidence to show the Officers are "interested person[s]" with standing to sue under TOMA. As we noted in *Peters*, there is some disagreement among Texas

appellate courts with respect to standing under TOMA. 2015 WL 8732420, at *9. The majority view is that TOMA broadly confers standing on any person who shares an injury in common with the general public. *Id.*; *see Hays Cnty. Water Planning P'ship v. Hays Cnty. Tex.*, 41 S.W.3d 174, 177 (Tex. App.—Austin 2001, pet. denied); *Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161, 162–63 (Tex. App.—Austin 1996, orig. proceeding); *City of Fort Worth v. Groves*, 746 S.W.2d 907, 912–13 (Tex. App.—Fort Worth 1988, no writ); *Cameron Cnty. Good G'vt League v. Ramon*, 619 S.W.2d 224, 230–31 (Tex. Civ. App.—Beaumont 1981, writ ref'd n.r.e.)). The College asks us to adopt the minority view, held by only one Texas court, that an "interested person" must demonstrate "particular injury or damage, and he must allege and show how he has been injured or damaged other than as a member of the general public." *City of Abilene v. Shackelford*, 572 S.W.2d 742, 746 (Tex. Civ. App.—Eastland 1978), *rev'd on other grounds*, 585 S.W.2d 665 (Tex. 1979).

We agree with the majority view. It makes little sense to require a plaintiff to demonstrate an injury distinct from the general public when "the interest protected by the Open Meetings Act *is* the interest of the general public." *Save Our Springs Alliance*, 934 S.W.2d at 163; *see also City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991) (explaining that TOMA's intended beneficiaries are "members of the interested public"). Because the Officers are members of the

general public with an interest in the affairs of the College, they are "interested person[s]" with standing to sue under TOMA.

That said, TOMA waives governmental immunity only to the extent the Officers seek injunctive or mandamus relief "to stop, prevent, or reverse a violation or threatened violation" of the Act. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 554 (Tex. 2019) (citing TEX. GOV'T CODE § 551.141–.142). TOMA does not permit a suit seeking a declaration that a governmental unit violated its provisions. *See id.* Thus, the vast majority of the alleged violations, for which the Officers seek only declaratory relief, do not give rise to an actionable claim. *See id.* And as the College's motion correctly points out, the Officers neither alleged nor produced evidence of any voidable action taken in violation of TOMA. Accordingly, to the extent the Officers seek remedies for past TOMA violations, their claims are barred by governmental immunity.

The same is not true with respect to the Officers' claims seeking injunctive or mandamus relief to prevent future TOMA violations. The Officers requested "[a]n Order requiring that [the College] post and list on the agendas of the Collin College Board of Trustees the matters that are addressed and discussed in executive, closed session as required by" TOMA. This request corresponds with their allegations that the College has a continuing pattern and practice of violating TOMA by providing inadequate notice of the subjects to be discussed and considered during closed sessions.

In its motion for summary judgment, the College did not contend the Officers lacked evidence of such a pattern or practice. Nor did it present evidence conclusively negating such a pattern or practice. Instead, it argued that, because the Officers' petition acknowledged the College made changes to its practices in response to their claims, the issue is now moot. But that argument ignores the Officers' specific allegation, in the same sentence as their admission concerning the changes made to the College's practices, that the College "still fails to provide adequate notice." The Officers thus alleged a continuing pattern or practice of TOMA notice violations, which the College failed to conclusively refute. Accordingly, the trial court erred to the extent it granted summary judgment on the Officers' claims seeking injunctive relief to prevent future violations of a similar nature. *See Kessling v. Friendswood Indep. Sch. Dist.*, 302 S.W.3d 373, 380 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (concluding allegations of a "pattern of past improper meeting notices" were sufficient to state a claim for injunctive and mandamus relief to prevent future TOMA violations); *Harris Cnty. Emergency Serv. Dist. No. 1 v. Harris Cnty. Emergency Corps.*, 999 S.W.2d 163, 171 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (same).[7] In all other respects, the trial court did not err by granting the College's second motion for partial summary judgment.

---

[7] Because the Officers alleged a continuing pattern of TOMA violations, this case is distinguishable from those cited by the College where courts concluded there were no "threatened violations" supporting a claim for injunctive or mandamus relief. *See, e.g.*, *Calhoun Port Auth. v. Victoria Advocate Publishing Co.*, No. 13-18-00486-CV, 2019 WL 1562003, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 11, 2019, pet.

denied) (mem. op.); *Cook v. Hedtke*, No. , 2018 WL 1660078, at *3 (Tex. App.—Austin Apr. 6, 2018, no pet.) (mem. op.); *Cornyn v. City of Garland*, 994 S.W.2d 258, 267 (Tex. App.—Austin 1999, no pet.).

THE TRIAL COURT PARTIALLY ERRED BY GRANTING SUMMARY JUDGMENT ON THE OFFICERS' WHISTLEBLOWER CLAIMS

The Officers next contend the trial court erred by granting summary judgment on their whistleblower-retaliation claims. The Texas Whistleblower Act (TWA) provides a limited waiver of governmental immunity. *See City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022). To maintain a claim under the TWA, a public employee must prove that he or she:

> (1) reported (2) a violation of law by the employer or another public employee (3) to an appropriate law enforcement authority, (4) the report was made in good faith, and (5) the adverse action would not have occurred when it did if the employee had not reported the illegal conduct.

*Id.*; *see* TEX. GOV'T CODE § 554.002(a). In addition, as a prerequisite to filing suit under the TWA, the employee must initiate a grievance under the governmental unit's grievance or appeal procedures within ninety days of the violation or its discovery using reasonable diligence. *Id.* § 554.006. The grievance must give notice of the same allegations asserted in the lawsuit. *See Burleson I*, 2017 WL 511196, at *9.

We address each officer's claims under the TWA in turn.

*Officer Bennight*

In early 2014, Officer Bennight reported—both internally and to outside law enforcement authorities—allegations of unlawful actions taken by College employees. Those actions included a fraudulent scheme to steal from the College

–26–

bookstore, unlawful efforts among high-ranking College officials to cover up the bookstore thefts, and illegal orders from his superior officers.

Officer Bennight alleges that College officials retaliated against him for reporting the illegal activity. Among the allegedly adverse actions mentioned in his various grievances are that College representatives: (1) removed him from the bookstore investigation; (2) reprimanded him for failing to perform a vehicle check; (3) curtailed his duties as a police officer by (a) changing policies affecting his abilities to make traffic stops and arrest certain misdemeanor offenders, (b) omitting him from a department-wide email list, and (c) ordering him not to perform investigations; (4) informed him his schedule would be changed so that he would have to work "deep nights," an undesirable shift that would also prevent him from working as an investigator[8]; (5) informed him he would be transferred to a different campus; (6) denied him promotions to sergeant in 2017 and 2019; and (7) denied him a promotion to lieutenant in 2019.

In its motion for summary judgment, the College argued Officer Bennight's claims all failed as a matter of law because he did not make a protected whistleblower report that caused any of the alleged adverse actions. Further, the College argued that the alleged adverse actions either did not qualify as such or were based on legitimate non-retaliatory reasons. *See* TEX. GOV'T CODE § 554.004(b)

---

[8] "Deep night" shifts run from 6:00 p.m. to 6:00 a.m.

(providing affirmative defense if an adverse action is based solely on information, observation, or evidence unrelated to the protected whistleblower report).

We reject the College's assertion that Officer Bennight failed to make a protected whistleblower report. Citing the supreme court's opinion in *Texas Department of Human Services v. Okoli*, the College argues that reports "up the chain of command" cannot qualify for whistleblower protection. *See* 440 S.W.3d 611, 614 (Tex. 2014). It further argues that reports cannot qualify for whistleblower protection if they involve or were made pursuant to an employee's job duties. But both the supreme court and this Court have rejected those arguments, clarifying that internal reports made to police officers can qualify for protection. *See Pridgen*, 653 S.W.3d at 186–87[9]; *City of Celina v. Scott*, No. 05-21-00823-CV, 2022 WL 1101589, at *4 (Tex. App.—Dallas Apr. 13, 2022, pet. denied) (mem. op.). That is what we have here.

With respect to causation, we reject the College's argument that Officer Bennight's claims cannot be based on reports he made to outside authorities, because

---

[9] In a post-submission letter citing *Pridgen*, the College argues that the Officers' reports do not qualify for whistleblower protection because the "vast majority" of them were based on the Officers' "mere subjective opinions and conclusions and were not: (1) exposing; (2) corroborating; or (3) providing information pertinent to identifying or investigating governmental illegality." But the College did not expressly raise that issue in its motions. *See* TEX. R. CIV. P. 166a(c); *Tempay, Inc. v. Tanintco, Inc.*, No. 05-15-00130-CV, 2016 WL 192596, at *3 (Tex. App.—Dallas Jan. 15, 2016, no pet.) (mem. op.). Moreover, the College has not adequately presented its arguments on the issue by addressing each alleged report made by each officer, explaining why each falls short of the standard articulated by the supreme court in *Pridgen*. And by raising the issue for the first time in a post-submission letter, the College deprived the Officers of a full and fair opportunity to develop the summary-judgment record in response to these arguments. For all of these reasons, we reject the College's new arguments based on *Pridgen*.

those responsible for the adverse actions were unaware of the external reports when taking those actions. The evidence does not conclusively show that those who participated in the alleged acts of retaliation did so, in each instance, without knowledge of Officer Bennight's reports to outside law enforcement authorities. Indeed, the evidence establishes that Chief Gromatzky was aware of the outside reports by March 26, 2014, at the latest,[10] which is before many of the adverse actions Officer Bennight alleges.

We also disagree with the College to the extent it argues that Officer Bennight failed to raise a fact issue as to whether he suffered an adverse employment action. "[A] personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 614 (Tex. 2007).

As an initial matter, the College mischaracterizes a portion of the issues raised in Officer Bennight's May 2, 2014 grievance. According to the College, Officer Bennight complained because he was left off an email, which was "purely an oversight" and quickly corrected, and he complained because "he was told by his police chief to do his job." But that does not accurately describe either Officer Bennight's complaint or Chief Gromatzky's response.

---

[10] That is the date by which Chief Gromatzky admits he was aware of the outside reports. As discussed below in relation to Officer Burleson's claims, this testimony does not conclusively establish March 26, 2014 as the earliest date by which Chief Gromatzky was aware of the outside reports.

In his grievance, Officer Bennight complained among other things that Chief Gromatzky curtailed his job duties as retaliation for his whistleblower reports. As evidence, he attached a March 29, 2014 email as an exhibit with the following description: "E-mail from Chief Gromatzky ordering that I not investigate cases, and confirming I was dropped from the mail distribution list." Although Chief Gromatzky states in the email that he omitted Officer Bennight from previous emails unintentionally, he also responded to Officer Bennight's question asking whether he should focus on investigative tasks with: "Please maintain your focus on patrol procedures and operational tactics."

Officer Bennight alleges that the College took adverse actions that affected his work assignments and "restricted his ability and discretion to exercise his duties and responsibilities as a police officer at Collin College." It is undisputed that Chief Gromatzky, along with others at the College, removed Officer Bennight from the bookstore investigation. And Officer Bennight testified the department removed his investigative duties altogether. Nothing in the evidence cited by the College conclusively establishes that College officials did not revoke or curtail Officer Bennight's investigative duties in retaliation for his protected reports. *See Ward v. Lamar Univ.*, 484 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Ward testified that she lost her procurement duties, which were the duties that had allowed her to discover the transactions she reported. Removing the very authority that allowed a whistleblower to find wrongdoing in the first place is some evidence

of an action that would likely dissuade a reasonable, similarly situated worker from making a report under the Act.").

That said, we agree with the College on the remaining bases for Officer Bennight's whistleblower claims.[11] The email reminding Officer Bennight to check his vehicle did not carry with it any present or future disciplinary consequences. *See City of Dallas v. Giles*, No. 05-15-00370-CV, 2016 WL 25744, at *4 (Tex. App.— Dallas Jan. 4, 2016, no pet.) (mem. op.). And Officer Bennight testified directly and unambiguously that the threatened transfers to "deep nights" on a different campus never materialized. *See Ward*, 484 S.W.3d at 449 (noting that unfulfilled threats generally do not constitute actionable adverse employment decisions). To the extent Officer Bennight complains about being ostracized by his co-workers, that is a "petty annoyance" rather than an adverse employment action. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755 (2018).

With respect to his failed attempts at promotion within the department, the College presented compelling evidence that its new police chief, William Taylor, instituted a testing program utilizing independent third-party assessors.[12] Chief Taylor testified that, as the decision maker, he awarded promotions based solely on the assessment scores. Officer Bennight's scores were far lower than those of the

---

[11] We address only those bases fairly raised in the Officers' jurisdictionally required grievances, as those are the only bases on which they can maintain their whistleblower claims. Thus, we do not address, among other allegations, the death threats the Officers allege they received.

[12] Although one of the four assessors was a dean at the College, the remaining three were officers from other area police departments.

candidates ultimately selected for promotion. In fact, Officer Bennight had the lowest score on the 2019 assessment. And with respect to the lieutenant opening in 2019, the record shows the job listing's minimum requirements included at least four years working as a police sergeant or its equivalent. Officer Bennight did not work as a police sergeant—indeed, his appeal complains about not being promoted to that position.

Officer Bennight points to no evidence refuting these facts; rather, he merely argues the evidence does not rule out the theoretical possibility that the third-party assessors somehow learned about the Officers' whistleblower reports from years earlier and allowed those reports to influence their assessments. We conclude that Officer Bennight failed to raise a genuine fact issue as to whether the College denied him promotions based on his protected reports.

*Officer Mark*

Officer Mark sent an email to the College president, Cary Israel, on April 10, 2014, copying Chief Gromatzky and another official within his chain of command. In that email, he reported being ordered to lock an intoxicated person in a closet for four hours, which he said constituted the crime of official oppression. Six days later, he received an "Employee Coaching Form" related to his email. That form began with the following boilerplate language:

> Constructive Feedback: Be specific, describing the job responsibilities or behavior that need to change and how the employee needs to change to meet expectations. (Note: Employee Coaching is not considered

–32–

formal discipline. However, an employee's failure to meet and sustain acceptable performance or behavior may result in formal disciplinary action in the future.)

Below that statement, the form's author reprimanded Officer Mark for going outside the chain of command in his email criticizing Chief Gromatzky's orders. The author instructed Officer Mark to immediately begin following all of the department's policies and procedures, including those "pertaining to the chain of command for all future orders, issues, or concerns." And the author concluded by warning that "[a]ny future violations of the same or similar nature will subject Officer Mark to disciplinary action, up to and including termination of employment."

Officer Mark alleges unlawful retaliation based on the April 2014 email. Among the alleged adverse actions for which he filed grievances are: (1) the "Employee Coaching Form"; (2) being threatened with receiving another year of "deep nights" as a result of sending the email; (3) being removed from the Field Training Officer (FTO) program in 2014[13]; (4) being denied promotions to sergeant in 2017 and 2019; (5) being denied a promotion to lieutenant in 2019; and (6) being the subject of an email from Chief Taylor that he believed was "meant to discredit, and make fun of" him.

The College moved for summary judgment on grounds that Officer Mark did not make a protected report that resulted in an adverse action. In addition, it argued

_____

[13] The FTO program involved training new police officers. Officers received an extra $1 per hour for their work in the program.

the adverse actions Officer Mark alleged either did not qualify as such or were based on legitimate non-retaliatory reasons.

As explained above, the College is incorrect in asserting that Officer Mark did not make a whistleblower report because internal reports "up the chain of command" are not protected under the TWA. *See Pridgen*, 653 S.W.3d at 186–87. We also reject the College's argument that Officer Mark's report does not qualify for whistleblower protection because he directed his email primarily to the College's president, rather than the police officers within his chain of command. Nothing in the TWA distinguishes between primary and secondary intended recipients of protected reports. Officer Mark sent his report to persons with appropriate law enforcement authority, which satisfies the TWA's requirements. *See* TEX. GOV'T CODE § 554.002.

We also reject the College's argument that the "Employee Coaching Form" Officer Mark received does not constitute an adverse action as a matter of law. Generally speaking, an appellate court's rulings on a question of law "will be regarded as the law of the case in all subsequent proceedings unless clearly erroneous." *Caplinger v. Allstate Ins. Co.*, 140 S.W.3d 927, 929 (Tex. App.—Dallas 2003, pet. denied). That means an appellate court ordinarily is bound by its initial decision if there is a subsequent appeal in the same case. *Id.* This doctrine, based on public policy, aims to promote finality of litigation, uniformity of decisions, judicial economy, and efficiency. *Id.*

In *Burleson I*, we rejected the same arguments the College now asserts concerning whether the "Employee Coaching Form" could qualify as an adverse action:

> Although the reprimand was entitled "coaching," and purported to give constructive feedback, the overall tone suggests something more. The form states that it is not "formal" discipline, but also warns that further infractions may result in termination. Therefore, it threatens negative repercussions regardless of whether it is formal or informal discipline.

> Moreover, the reprimand accompanied an undesirable shift change that Mark was told resulted from the reprimand. Under the totality of these circumstances, we cannot conclude as a matter of law that these actions would not deter a similarly situated employee from reporting a violation of law.

2017 WL 511196, at *6.

The College argues we should ignore our previous holding because the record here is more developed, with additional evidence concerning the College's policies on the use of coaching forms. But the College does not specifically identify this additional evidence with citations to the record. Nor does it explain why this "new" evidence was unavailable during the first appeal. *See Caplinger*, 140 S.W.3d at 930 (facts available during first appeal are not "new" facts that render the law of the case doctrine inapplicable). Regardless, the "new" evidence cited by the College does not compel a different result here. Evidence clarifying the intended use of coaching forms under the College's policy does not establish that the "Employee Coaching Form" given to Officer Mark complied with that policy. Moreover, as the College's

–35–

counsel conceded at oral argument, the "new" evidence does not address the College's progressive disciplinary process and the effect coaching forms may have on that process.

We are similarly bound by our conclusion in *Burleson I* that the schedule given to Officer Mark—extending his "deep night" shifts—may qualify as an adverse action, especially when considered in combination with his receiving the "Employee Coaching Form." We are not convinced by the College's argument that, because Officer Mark already worked "deep night" shifts, extending those shifts cannot constitute an adverse action. The evidence does not conclusively establish that the College would have assigned Officer Mark those shifts regardless of whether he filed a protected report. At best, a fact issue exists as to whether the protected report played any role in Officer Mark's unfavorable shift assignments.

That said, we agree with the College that Officer Mark failed to raise a fact issue with respect to the other alleged adverse actions. To the extent he complains about being removed from the FTO program in 2014, he did not timely file a grievance. *See* TEX. GOV'T CODE § 554.006(b) (grievance must be filed within ninety days of violation or its discovery through reasonable diligence). Indeed, the College last assigned Officer Mark an FTO recruit in 2014, yet he waited until 2019 to inquire about whether he was still part of the program. This demonstrates a lack of reasonable diligence as a matter of law.

With respect to Officer Mark's failure to obtain a promotion, we reject his claims for the same reasons we rejected Officer Bennight's. Compelling evidence shows the College chose not to promote Officer Mark to sergeant solely because he scored poorly on the selection assessments. And he did not meet the minimum qualifications for a promotion to lieutenant.

With respect to Officer Mark's complaint that Chief Taylor sent an email "meant to discredit, and make fun of" him, that email does not rise to the level of an adverse employment action. *See Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 731.

*Officer Burleson*

Officer Burleson reported to Chief Gromatzky in January or February 2014 that employees had stolen more than $1 million from the College bookstore. He also reported the thefts to President Israel on or about February 18, 2014. According to Officer Burleson's grievance, Chief Gromatzky called him the next day, screaming and cursing, and told him the flexibility in his schedule and discretion in his job duties were now gone.

Chief Gromatzky ordered Officers Burleson and Bennight to close their investigation of the bookstore on March 7, and Officer Burleson reported the crimes of coercion of a public servant and public corruption to outside law enforcement authorities that same day. According to Officer Burleson, the College then changed his schedule on March 18 and removed his "flex time."

Officer Burleson alleges the College retaliated against him for his reports to both Chief Gromatzky and outside law enforcement. And he claims he suffered adverse actions that included: (1) changes to his schedule; (2) losing his "flex time"; (3) losing his investigative "detective"[14] duties; (4) being transferred to a different campus; and (5) harassment.[15]

The College moved for summary judgment arguing that Officer Burleson did not make a protected whistleblower report because internal reports made pursuant to his job duties do not qualify under the TWA—an argument we again reject for the reasons explained above. The College also argued both that Officer Burleson's report to outside law enforcement authorities could not have caused any alleged retaliation and that the loss of "flex time" was not an adverse action—arguments we expressly rejected in *Burleson I*. *See* 2017 WL 511196, at *7–8. The College does not specify what "new" evidence justifies a departure from our prior holdings. *See Caplinger*, 140 S.W.3d at 930. Regardless, based on this record, we again reject the College's arguments.

With respect to Officer Burleson's reports to outside agencies, nothing in the record conclusively establishes the dates by which those responsible for the

---

[14] "Detective" was a voluntary position that did not include increased pay or rank.

[15] Officer Burleson also complained that the College wrongfully terminated his employment, but he presents no appellate challenge to the summary judgment as it relates to that claim. In any event, the College produced compelling evidence showing that the sole reason it terminated Officer Burleson was because he did not either return to work or request additional unpaid leave after exhausting his FMLA leave, despite multiple requests from the College that he do so.

retaliatory actions first learned about the outside reports. Although Chief Gromatzky testified he first became aware of those reports on March 26, his testimony alone does not conclusively establish the issue—particularly in light of evidence suggesting other College employees may have learned about the reports before then.

As for Officer Burleson's "flex time," the College argues it revoked that benefit because it violated College policy. But even if the College had a legitimate reason to revoke the benefit, there is evidence suggesting it did not revoke it solely because of its policy. Indeed, Officer Burleson's grievance stated that Chief Gromatzky specifically told him he was going to revoke the flex time as punishment. And the evidence is undisputed that the College did not enforce its flex-time policy against Officer Burleson until shortly after he made his protected reports. Thus, at a minimum, there is a fact issue as to whether the revocation was retaliatory.

With respect to the changes made to Officer Burleson's schedule, the College argued those changes were only temporary. But the College failed to explain why temporary retaliatory actions cannot be actionable under the TWA.

That said, we agree with the College that Officer Burleson did not raise a fact issue as to whether he suffered actionable harassment. Chief Gromatzky's verbal tirade and other officers' "constantly just messing with" him do not rise to the level

of an actionable adverse action. *See Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 789.[16]

We dispose of the appeal as follows:

(1) We reverse the trial court's judgment to the extent it dismissed the Officers' free speech claims under the Texas Constitution with prejudice, and we render judgment dismissing those claims without prejudice for lack of jurisdiction;

(2) We reverse the trial court's sanctions award without prejudice to the College reasserting its sanctions request upon remand;

(3) We reverse the trial court's grant of the College's second motion for partial summary judgment to the extent it dismissed the Officers' claims under TOMA seeking injunctive or mandamus relief to prevent future notice violations;

(4) We reverse the trial court's grant of summary judgment on Officer Bennight's claims under the TWA to the extent they are based on the College curtailing his investigative duties;

(5) We reverse the trial court's grant of summary judgment on Officer Mark's claims under the TWA to the extent they are based on the "Employee Coaching Form" he received and any retaliatory changes to his schedule; and

(6) We reverse the trial court's grant of summary judgment on Officer Burleson's claims under the TWA to the extent they are based on retaliatory changes to his schedule, losing his "flex time," curtailing his investigative duties, or being transferred to a different campus.

In all other respects, we affirm the trial court's judgment and remand the case for further proceedings consistent with this opinion.

/Cory L. Carlyle/
210088f.p05                     CORY L. CARLYLE
                                JUSTICE

---

[16] We note that the College's motion did not separately and specifically attack Officer Burleson's claims of adverse actions based on a transfer to a different campus or the loss of his investigative duties. Thus, we express no opinion on whether those allegations may support actionable retaliation claims.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

BILLY D. BURLESON, III, JON J.
MARK, AND CRAIG A.
BENNIGHT, Appellant

No. 05-21-00088-CV          V.

COLLIN COUNTY COMMUNITY
COLLEGE DISRICT, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-04944-
2014.
Opinion delivered by Justice Carlyle.
Justices Myers and Goldstein
participating.

In accordance with this Court's opinion of this date, the judgment of

the trial court is **AFFIRMED** in part and **REVERSED** in part. We dispose of the

appeal as follows:

(1) We reverse the trial court's judgment to the extent it dismissed appellants' free speech claims under the Texas Constitution with prejudice, and we render judgment dismissing those claims without prejudice for lack of jurisdiction;

(2) We reverse the trial court's sanctions award without prejudice to appelle reasserting its sanctions request upon remand;

(3) We reverse the trial court's grant of appellee's second motion for partial summary judgment to the extent it dismissed appellants' claims under the Texas Open Meetings Act seeking injunctive or mandamus relief to prevent future notice violations;

(4) We reverse the trial court's grant of summary judgment on appellant Bennight's claims under the Texas Whistleblower Act (TWA) to the extent they are based on appellee curtailing his investigative duties;

(5) We reverse the trial court's grant of summary judgment on appellant Mark's claims under the TWA to the extent they are based on the

–41–

"Employee Coaching Form" he received and any retaliatory changes to his schedule; and

(6) We reverse the trial court's grant of summary judgment on appellant Burleson's claims under the TWA to the extent they are based on retaliatory changes to his schedule, losing his "flex time," curtailing his investigative duties, or being transferred to a different campus.

In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 20th day of December, 2022.